#26584-r-SLZ

**2013 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RUSHMORE SHADOWS, LLC,            Appellee,

    v.

PENNINGTON COUNTY BOARD
OF EQUALIZATION,            Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

ERIKA S. OLSON of
Wilson, Olson & Nash, PC
Rapid City, South Dakota            Attorneys for appellee.


MARK VARGO
Pennington County State's Attorney

PATRICK M. GRODE
Pennington County
 Deputy State's Attorney
Rapid City, South Dakota            Attorneys for appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2013

OPINION FILED **10/09/13**

#26584

ZINTER, Justice

[¶1.] Rushmore Shadows uses fourteen "recreational park trailers" as cabins in a campground it operates.[1] Pennington County (the County) assessed the cabins as real property for ad valorem taxation purposes, and Rushmore Shadows appealed. On cross-motions for summary judgment, the circuit court reversed, concluding that the cabins were not taxable under SDCL 10-4-2. We reverse.

*Facts and Procedural History*

[¶2.] The parties stipulated to the facts. Rushmore Shadows is the owner of fourteen recreational park trailers that are used as cabins for lodging. The cabins are located in Rushmore Shadows' campground in Rapid City. They are identified by names, such as Iron Creek Cabin, Coyote Cabin, and Horse Thief Cabin.

[¶3.] The trailers were built on a single chassis with wheels, and they do not exceed 400 square feet in size.[2] After being manufactured, they were towed to the

---

1. SDCL 32-3-1(17A) defines "recreational park trailer" as "a vehicle that is primarily designed to provide temporary living quarters for recreational, camping, or seasonal use and which":

   (a) Is built on a single chassis mounted on wheels;

   (b) Has a gross trailer area not exceeding four hundred square feet in the setup mode;

   (c) Is certified by the manufacturer as complying with American National Standards Institute Standard No. A119.5 in effect on January 1, 2008; and

   (d) Has at least a seventeen digit identification number and the manufacturer has designated the vehicle as a recreational park model on the manufacturer statement of origin[.]

2. All the trailers were designated by their manufacturer as a recreational park model, recreational park trailer, or park model on the statement of origin.

(continued . . .)

campground and set up on blocks. The wheels, brakes, and safety lights were removed. They were skirted and attached to decks by lag bolts, but neither the trailers nor the decks were physically attached to the ground.

[¶4.] The trailers were put into use as cabins at different times. Seven were placed on their current sites and put into use thirteen years ago. Three were placed in 2008, and the other four were placed in 2009. Seven of the trailers were registered as vehicles in 2008, although those registrations were not renewed. The remaining seven have never been registered as vehicles. None of the trailers have been moved since being put into use as cabins.

[¶5.] The cabins have similar utility connections. Each is supplied with fuel by an onsite propane tank. Electricity is provided by electrical hookup boxes next to each cabin. Sewage and graywater are removed through PVC pipe going into the ground, and water is provided by a hose. Each year, before freezing, the water and sewer are disconnected. The cabins are then reconnected to the water and sewer in the spring. The cabins are not used while disconnected from the water and sewer.

[¶6.] In 2012, the County included the value of the cabins in Rushmore Shadows' real property tax assessment. The County contended that they met the statutory definition of taxable real property in SDCL 10-4-2(2). Rushmore Shadows

---

(. . . continued)

They also have seventeen digit identification numbers. Eleven of the fourteen trailers were certified by the manufacturer as compliant with the American National Standards Institute Standard (ANSIS) No. A119.5, a statutory requirement for being treated as a recreational park trailer. In his affidavit, Eugene Addink, the manager of Rushmore Shadows, stated that Rushmore Shadows had attempted to contact the manufacturer of the remaining three trailers to obtain documentation of ANSIS compliance but was unsuccessful.

objected, but the Pennington County Board of Equalization affirmed the assessment. Rushmore Shadows appealed to the circuit court. Rushmore Shadows and the County stipulated to the facts and filed cross-motions for summary judgment. After a hearing, the circuit court granted Rushmore Shadows' motion and denied the County's. The County appeals, arguing that the cabins are "improvements to land," making them taxable as real property under SDCL 10-4-2(2).

*Decision*

[¶7.]        Because the parties stipulated to the facts, we review whether the circuit court properly interpreted and applied the law. *Econ. Aero Club, Inc. v. Avemco Ins. Co.*, 540 N.W.2d 644, 645 (S.D. 1995). The interpretation and application of a tax statute is a question of law that we review de novo. *See Butler Mach. Co. v. S.D. Dep't of Revenue*, 2002 S.D. 134, ¶ 6, 653 N.W.2d 757, 759 (citation omitted). Statutes that "impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body." *Id.* (quoting *Robinson & Muenster Assocs., Inc. v. S.D. Dep't of Revenue*, 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612).

[¶8.]        All real property is subject to ad valorem taxation unless expressly exempted. SDCL 10-4-1. As is relevant here, real property is defined to include: "Improvements to land . . . consisting of items permanently affixed to and becoming part of the real estate. The term, permanently affixed, refers to the economic life of the improvement rather than perpetuity[.]" SDCL 10-4-2(2). Thus, the question is whether the cabins became improvements to land consisting of items affixed to the

land for their economic life, language that includes "fixtures."[3] *In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d 281, 283 (S.D. 1983) ("'[I]mprovement' is generally defined to include everything, such as buildings and fixtures, that permanently enhances the value of premises for general uses." (citation omitted)).

[¶9.]     The County points out that we have used a number of factors to determine whether property is a fixture. Because "improvements to land" include "fixtures," those factors are relevant. The factors include: "(1) annexation to the realty; either actual or constructive; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation." *In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d at 282 (citation omitted).[4] Intent

---

3.     Rushmore Shadows contends that the County's cited cases "to a great extent no longer appl[y] due to the changes in [SDCL 10-4-2.]" Rushmore Shadows first points out that the statute was amended in 1992. That amendment deleted the word "fixture" from the definition of real property in SDCL 10-4-2. *See* 1992 S.D. Sess. Laws ch. 74, § 1. Although the current version of SDCL 10-4-2 no longer uses the term "fixture," the statute still defines real property, in part, as "improvements to land . . . consisting of items permanently *affixed to* and becoming part of the real estate." (Emphasis added.) We have treated the words "fixture" and "affixed to land" similarly. *See In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d 281, 282 n.3 (S.D. 1983). Therefore, our pre-1992 cases are not distinguished by the 1992 amendment.

Rushmore Shadows also claims that a "substantial revision" to SDCL 10-4-2 was made in 1997. *See* 1997 S.D. Sess. Laws ch. 51, § 1. Rushmore Shadows contends that, before the 1997 amendment, SDCL 10-4-2 "was broader and much less clear than the current version[.]" Although the current version of SDCL 10-4-2 changed the text to a list format, the 1997 amendment did not change the substance to the extent that our pre-1997 cases no longer apply.

4.     These factors are also used to determine if property is a realty improvement subject to the contractor's excise tax under SDCL 10-46A-1. *See, e.g., Brink Electric Constr. Co. v. Dep't of Revenue,* 472 N.W.2d 493, 498 (S.D. 1991).

(continued . . .)

#26584

dominates, as the other factors "derive their chief value as evidence of such intention." *Id.* at 282-83 (citations omitted). "[I]ntent is not the secret intent in the mind, but the intent that may be deduced from . . . the circumstances of the particular case." *Dakota Harvestore Sys., Inc. v. S.D. Dep't of Revenue*, 331 N.W.2d 828, 829 (S.D. 1983) (quoting *First Nat'l Bank of Aberdeen v. Jacobs*, 273 N.W.2d 743, 746 (S.D. 1978)).

[¶10.] Rushmore Shadows argues that the cabins are not "improvements to land" because it did not intend to permanently affix the cabins to the real estate. It notes that the cabins sit on blocks that are not attached to the ground, and the cabins are served by utilities that are disconnected during the winter. Rushmore Shadows also contends that if its campground's demands change, it may move the cabins to meet that demand. It points out that the lack of physical attachment provides flexibility to redesign the campground in the future.

[¶11.] The County argues that Rushmore Shadows' intention to make permanent improvements to the land is shown by a number of facts. First, the County points out that Rushmore Shadows' cabins have never been moved since being set up at their sites. Second, the cabins are "stabilized, skirted, attached to utilities, and bolted to decks." Third, they are not presently registered as vehicles, and some have never been registered. Finally, the County notes that the cabins promote Rushmore Shadows' use of its property because "the property is used as a campground, and the cabins are rented to customers."

_____

(. . . continued)
      Our decisions applying SDCL 10-46A-1 also provide guidance on what constitutes an "improvement to land."

[¶12.]     Concededly, a lack of physical attachment generally tends to suggest that property is not intended to become permanently affixed to real estate. But intent is not deduced from any single fact. Intent is "deduced from . . . the circumstances of a *particular* case[,]" with consideration given to *all the circumstances*. *In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d at 283 (emphasis added) (citations omitted); *see also Dakota Harvestore Sys., Inc.*, 331 N.W.2d at 830 (Wollman, J., concurring specially) ("We must consider all the circumstances of a particular case." (citation omitted)). Further, to be classified as an "improvement to land," the improvement need not be actually attached to the real estate; constructive attachment may also indicate that a party intended to permanently affix property to real estate. *See In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d at 282 (citation omitted).

[¶13.]     In this case, the cabins are constructively attached to the real estate. Rushmore Shadows put fourteen trailers to use in its campground as seasonal places of abode. None of them have been moved since being placed for use as lodging, half of them for a period of thirteen years. Additionally, most of the cabins have been reroofed and resided. Although Rushmore Shadows argues that it intends to move the cabins if campground demand changes or they decide to redesign their campground, the focus is on "the circumstances of the particular case[,]" not on "the secret intent in the mind[.]" *Dakota Harvestore Sys., Inc.*, 331 N.W.2d at 829 (quoting *First Nat'l Bank of Aberdeen*, 273 N.W.2d at 746). The facts of this case reflect that the trailers have been constructively affixed to the real estate for their economic life.

[¶14.] The cabins also promote the use of Rushmore Shadows' real property. "[W]hether the article placed on the land is designed to promote the use to which the realty has been put" is a factor to consider when determining intent. *See id.* (quoting *First Nat'l Bank of Aberdeen*, 273 N.W.2d at 746). In this case, Rushmore Shadows is using its land as a campground. To promote that use, it placed the trailers, skirted them, attached them to utilities, bolted them to decks, and identified them as cabins with specific names in order to rent them to customers for lodging. Rushmore Shadows' continuous use of the cabins as places of lodging in its campground demonstrates intent to affix the cabins to the real estate for their economic life.

[¶15.] Rushmore Shadows argues that this case is different from our prior cases in which we have found that the property constituted an improvement to land. *See Nat'l Food Corp. v. Aurora Cnty. Bd. of Comm'rs*, 537 N.W.2d 564, 566 (S.D. 1995); *Brink Electric Constr. Co.*, 472 N.W.2d at 500; *Dakota Harvestore Sys., Inc.*, 331 N.W.2d at 830. Rushmore Shadows points out that in those cases the property was either bolted to the real estate or was extremely heavy. Although those were significant facts in those cases, reliance on those two facts alone fails to consider that the determination of intent is a fact-specific task, "deduced from . . . the circumstances of a particular case." *See In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d at 283 (citations omitted).

[¶16.] Although the cabins may be "light" in comparison to the silos in *Dakota Harvestore* and the equipment in *Brink,* this fact overlooks important similarities. The silos in *Dakota Harvestore* were determined to be realty improvements in part

because they were "placed upon farm land to promote the use for which the realty [had] been put." 331 N.W.2d at 830. Similarly, in *Brink* the equipment promoted the use of the land as an electrical substation. *See* 472 N.W.2d at 499. Like *Dakota Harvestore* and *Brink*, the improvements in this case—the cabins—were placed on the realty to promote its use as a campground.

[¶17.]     Rushmore Shadows also overemphasizes the fact that the cabins are not bolted to the ground. Property need not be actually attached to the real estate. Constructive attachment also indicates that a party intended to permanently affix the property to the real estate. *See In re Tax Appeal of Logan & Assocs.*, 331 N.W.2d at 282 (citation omitted). What the cabins lack in physical attachment to land is offset by the length of time they have remained in the same location for use as places of lodging. This use of the improvements is a strong indication that Rushmore Shadows intended to affix the cabins to the real estate for the economic life of the trailers.

[¶18.]     Rushmore Shadows also argues that because its cabins qualify as "recreational park trailers" under SDCL 32-3-1(17A), they cannot be classified as taxable "mobile homes" under SDCL 10-4-2(5), or as taxable "manufactured homes" under SDCL 10-4-2.4. Rushmore Shadows further argues that because their cabins do not sit on foundations, they cannot be classified as real property under SDCL 10-4-2(4). These arguments focus on statutes that are not at issue in this case. Rushmore Shadows' cabins were not classified as real property under SDCL 10-4-2(4), SDCL 10-4-2(5), or SDCL 10-4-2.4. Instead, they were classified as real

property under SDCL 10-4-2(2), which applies irrespective of the property's character as a mobile home, manufactured home, or whether it sits on a foundation.

[¶19.]    Finally, Rushmore Shadows suggests that because their cabins qualify as "recreational park trailers," they are categorically excluded from taxation under SDCL 10-4-2. Rushmore Shadows points out that in defining real property subject to taxation, SDCL 10-4-2(5) references SDCL 32-3-1(8), which defines "mobile homes" to exclude a recreational park trailer. Therefore, Rushmore Shadows is correct that if a cabin meets the statutory definition of recreational park trailer, it is not subject to ad valorem taxation under subsection (5) of SDCL 10-4-2 (taxation of mobile homes on foundations). But again, the exclusion from taxation under SDCL 10-4-2(5) does not mean that recreational park trailers are categorically excluded from the remaining definitions of real property in SDCL 10-4-2. If recreational park trailers are used on the real estate such that they become an "improvement to [the] land," they may be subject to classification as real property under SDCL 10-4-2(2).

[¶20.]    When considered together, the facts of this case establish that Rushmore Shadows' cabins are "improvements to land" within the meaning of SDCL 10-4-2(2). We reverse the circuit court's grant of summary judgment in favor of Rushmore Shadows and its denial of summary judgment in favor of the County.

[¶21.]    GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.