ARGA COMPANY, OHIO AVIATION COMPANY DIVISION, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Arga Co. *v.* Limbach (1988), 36 Ohio St. 3d 220.]

(No. 86-1706—Decided May 11, 1988.)

*Taft, Stettinius & Hollister, Stephen M. Nechemias* and *Patrick J. Mitchell,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

*Per Curiam.* The county permissive tax is levied pursuant to R.C. 5739.021, which provided at the time pertinent herein:

"For the purpose of providing additional general revenues for the county and paying the expenses of administering such a levy, any county may levy a tax * * * in addition to the tax imposed by section 5739.02 of the Revised Code upon *every retail sale,* except sales of motor vehicles, *made in the county.* * * *" (Emphasis added.)

For both the general sales tax imposed by R.C. 5739.02 and the county permissive sales tax, the situs of the "retail sale" is also the situs for the tax. Since R.C. 5739.021 permits the tax to be levied on every retail sale made in the county, only retail sales whose situs is in the county are subject to the permissive tax.

R.C. 5739.01(E) defines "[r]etail sale" to include all sales, except for several specified sales not pertinent here. R.C. 5739.01(B) defines "[s]ale" to include:

"* * * All transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever * * *."

This court has held that under R.C. 5739.01, "a 'sale' occurs *when* one person becomes obligated under a contract to pay the 'price' and another becomes obligated to 'transfer tangible

personal property,' * * * [so that the] sales tax applies and is collectible as of the time of such sale regardless of the time when the price is actually paid or the property actually transferred." (Emphasis added.) *DeVille Photography, Inc.* v. *Bowers* (1959), 169 Ohio St. 267, 8 O.O. 2d 281, 159 N.E. 2d 443, paragraph two of the syllabus.

In *PPG Industries, Inc.* v. *Lindley* (1982), 1 Ohio St. 3d 212, 1 OBR 237, 438 N.E. 2d 907, PPG had leased some trailers and, consequently, had possession of them. It later decided to purchase them. The purchase contract was apparently signed in Ohio. The Tax Commissioner assessed a sales tax on the transaction. We observed that the definition of "sale" in R.C. 5739.01(B) contemplates a transfer of title to or possession of tangible personal property. Since PPG had possession of the trailers when purchased, the sale would have been an Ohio sale only if the transfer of title had occurred in Ohio. We applied R.C. 1302.42[1] and determined that the parties agreed to transfer title outside Ohio. Thus, the sale occurred outside Ohio and was not subject to Ohio sales tax.[2]

The transfer of title to or possession of tangible personal property is a "sale" and the taxable event on which the tax is imposed. *Where* this occurs is *where* the tax may be imposed. "Only those sales made within the state can be taxed, but not those outside its borders." *Id.* at 214, 1 OBR at 238, 438 N.E. 2d at 908. We hold that these same principles apply to the levy of the county permissive tax here.

The BTA correctly determined that the contract was required to be in writing by the Statute of Frauds, R.C. 1302.04. The evidence supports the BTA's finding that the customer's proposal to appellant's salesperson was merely the solicitation of an offer. When appellant sent the written agreement, signed by its officer, to the salesperson in Columbus, it was making the offer. The evidence further supports the finding that the customer accepted this offer by signing the contract.

R.C. 1302.09(A)(1) states that "an offer to make a contract shall be con-

---

[1] R.C. 1302.42 in pertinent part states: "* * * Insofar as situations are not covered by the other provisions of sections 1302.01 to 1302.98, inclusive, of the Revised Code and matters concerning title become material, the following rules apply:

"(A) * * * Subject to these provisions and to the provisions of sections 1309.01 to 1309.50, inclusive, of the Revised Code, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

"(B) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:

"(1) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"(2) *if the contract requires delivery at destination, title passes on tender there.*" (Emphasis added.)

[2] In *PPG Industries,* we stated in footnote 3 that a "sale" is not dependent upon the situs of the signing of the contract. This is in contrast with what we said in *Pittsburgh & Conneaut Dock Co.* v. *Limbach* (1985), 18 Ohio St. 3d 320, 325, 18 OBR 365, 369, 481 N.E. 2d 579, 583. We adopt the view stated in *PPG Industries.*

strued as inviting acceptance in any manner and by any medium reasonable in the circumstances." The salesperson was capable of receiving, and did receive, acceptance on behalf of appellant. He received and transmitted the documents in all dealings between the parties. It was reasonable for the BTA to find that acceptance was received by the salesperson and transmitted to appellant. Neither the law nor the record, however, supports the further BTA finding that the acceptance of this offer needed to be transmitted to appellant for the parties to be bound by the contract. It was unreasonable and unlawful to find that the contract was required to be conveyed to appellant to bind the parties.

Furthermore, R.C. 1302.42(B)(2) provides that title passes to the buyer when the property is tendered at the destination specified in the contract. It also provides that title passes at the time and place at which the seller completes his performance by physically delivering the goods, unless otherwise specified.

In many of the sales herein, the place for delivery was stipulated to be Port Columbus, Ohio, in Franklin County. According to the testimony, all deliveries were scheduled to and did take place at Port Columbus. Since delivery took place in Franklin County, as usually specified, the sales occurred in Franklin County.

We conclude the BTA erred when it found that the parties were bound in Montgomery County. We hold that the contract was formed, and the parties bound, in Franklin County. The tax was collectible, if at all, when the agreement was made. We further hold that the situs of the sales was in Franklin County since transfer of title to and possession of the tangible personal property occurred there.[3] No permissive sales tax was due, because none was levied by Franklin County during the audit period.

The decision of the BTA is unreasonable and unlawful and is, therefore, reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

LOCHER and DOUGLAS, JJ., concur in judgment only.

---

[3] Three of the proposals were not signed by an officer of appellant, as required by the Statute of Frauds. Since performance, *i.e.*, delivery of the airplanes, occurred at Port Columbus, these sales occurred in Franklin County. R.C. 1302.04 and 1302.42(B)(2).