OPINION
Defendant-appellant Progressive Insurance Company appeals from the June 12, 2001, Judgment Entry of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
On June 15, 1999, appellee James Pillo was seriously injured when the motorcycle he was operating was struck by an automobile operated by Leonard Stricklin. While appellee James Pillo's medical expenses exceeded $125,000.00, Stricklin's liability insurance limits were $50,000.00.
At the time of the accident, appellee James Pillo was the named insured on a motorcycle liability insurance policy issued by appellant Progressive Insurance Company[1]. The policy, which covered the period from July 7, 1998, through July 7, 1999, provides bodily injury liability limits in the amount of $100,000.00 per person and $300,000.00 per accident. It is undisputed that appellee James Pillo authorized his wife, appellee Gail Pillo, to sign the documents obtaining insurance coverage for the motorcycle. It is also undisputed that appellee Gail Pillo signed her husband's name to a form rejecting uninsured/underinsured coverage equal to his bodily injury limits and selecting lower limits ($25,000/$50,000) of uninsured/underinsured motorist coverage.
Subsequently, appellees filed a complaint against appellant seeking uninsured/underinsured motorist coverage in an amount equal to the bodily injury liability limits under the motorcycle liability policy issued by appellant to appellees. Appellants contend that their election of lower limits for uninsured/underinsured motorist coverage is not valid because the written offer from the insurance company to appellants for uninsured/underinsured coverage was not adequate under the law. After both appellees and appellant filed cross motions for summary judgment on the issue of the availability of uninsured/underinsured motorist coverage benefits under such policy, the trial court, as memorialized in a Judgment Entry filed on June 12, 2001, granted appellees' motion while overruling that filed by appellant.[2]
It is from the trial court's June 12, 2001, Judgment Entry that appellant now prosecutes its appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING PLAINTIFFS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ.R. 56(C) states in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
It is based upon this standard we review appellant's sole assignment of error.
 I
Appellant, in its sole assignment of error, argues that the trial court erred in granting the Motion for Summary Judgment filed by appellees while denying that filed by appellant. Appellant specifically contends that the trial court erred in holding that appellees' rejection of the full amount of uninsured/underinsured coverage available ($100,000/$300,000) and election of lower limits of uninsured/underinsured motorist coverage ($25,000/$50,000) were not valid and enforceable.
Both parties agree that the version of R.C. 3937.18 that is controlling is that enacted by Am.Sub.H.B. No. 261, effective September 3, 1997. The relevant version of R.C. 3937.18, Ohio's uninsured/underinsured motorist statute, provides for the mandatory offering of uninsured/underinsured motorist coverage in an amount equal to the amount of liability insurance provided. Such statute further states, in pertinent part, as follows:
 (C) A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. The schedule of limits approved by the superintendent may permit a named insured or applicant to select uninsured and underinsured motorists coverages with limits on such coverages that are less than the limit of liability coverage provided by the automobile liability or motor vehicle liability policy of insurance under which the coverages are provided, but the limits shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
The Ohio Supreme Court, in Linko v. Indemn. Ins. Co. of N. Am. (2001),90 Ohio St.3d 445, addressed the issue of what language needed to be included in an uninsured/underinsured motorist coverage rejection form to satisfy the offer requirement of R.C. 3937.18(C). The Court, in Linko, held that in order to satisfy the offer requirement, the insurer must (1) inform the insured of the availability of uninsured/underinsured motorist coverage, (2) set forth the premium for the coverage, (3) include a brief description of the coverage, and (4) expressly state the uninsured/underinsured coverage limits in its offer. Id. at 447-448. In so holding, the Ohio Supreme Court relied on Gyori v. Johnston Coca-ColaBottling Group, Inc. (1996), 76 Ohio St.3d 565, in which the court held that there can be no rejection pursuant to R.C. 3937.18(C) unless there was a written offer of uninsured motorist coverage from the insurer. The Supreme Court, in discussing Gyori, stated as follows:
 Gyori stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name.
Id. at 449. We concur with appellees that the 1997 Amendments to R.C.3937.18 did not eliminate the Linko requirements. As noted by appellees, no provisions in H.B. 261 clarified or modified what the contents of a written offer must be.
In the case sub judice, the trial court, applying Linko, held that appellees' rejection of the full amount of uninsured/underinsured motorist coverage was invalid because "Progressive's [appellant's] offer was not a complete written offer as required above by Linko. There is no brief description of the UM/UIM coverage. The premium for UM/UIM coverage is not stated. There is no statement on the waiver form as to the full amount of UM/UIM coverage available." We concur. As is stated above, the motorcycle liability policy issued by appellant to appellees provides bodily injury liability coverage in the amount of $100,000.00 per person and $300,000.00 per accident. However, appellees, in accordance with R.C. 3937.18(C), chose to select uninsured/underinsured motorist coverage in the amount of $25,000.00 per person and $50,000.00 per accident, which is lower than the limits of liability coverage. The form electing lower limits to which appellee Gail Pillo signed her husband's name provides, in relevant part, as follows:
 LOWER UNINSURED AND UNDERINSURED MOTORISTS COVERAGE
I understand that I may select Uninsured and Underinsured Motorists coverages at limits lower than the Bodily Injury Liability limits afforded. I do hereby certify selection of limits lower than the Bodily Injury limits UM/UIM Limits Purchased: 25/50 Clearly, applying Linko,supra., the rejection form signed by appellee Gail Pillo did not satisfy the offer requirements of R.C. 3937.18(C). As the trial court noted, the form fails to contain a brief description of uninsured/underinsured coverage and does not state the premium for the same. Nor is there a statement on the form as to the full amount of uninsured/underinsured coverage available. The rejection form signed by appellee Gail Pillo, "lacking in that required information, thus could not be termed a written offer that would allow an insured to make an express, knowing rejection of the coverage." Linko, supra., at 449. The trial court, therefore, was correct in finding that there was not a valid and enforceable rejection of the full amount of uninsured/underinsured motorist coverage by appellees. Absent such a rejection, underinsured coverage is deemed equal to liability coverage by operation of law. See Poots v. Motorist Ins.Co. (1986), 38 Ohio App.3d 48.
Appellant, in its brief, argues that the form signed by appellee Gail Pillo rejecting the full amount of uninsured/underinsured motorist coverage was valid and enforceable. Appellant specifically points to the following language contained in R.C. 3937.18(C):
 A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
According to appellant, the "presumption" referred to above constitutes a conclusive presumption as opposed to a rebuttable presumption. We, however, do not agree. According to State v. Myers (1971),26 Ohio St.2d 190, 201, "* * * statutory presumptions not specifically designated to be conclusive, may be rebutted by other evidence. * * *" (Citations omitted.) Thus, since the statutory presumption set forth in R.C. 3937.18(C) is not "specifically designated to be conclusive", we find that the same is rebuttable. See also Thomas Steel Strip Corp. v.Limbach (1991), 61 Ohio St.3d 340. In short, the presumption of an offer of coverages consistent with R.C. 3937.18(A) was rebuttable.
Based on the foregoing, we find that appellees rejection of the full
limits of uninsured/underinsured coverage was invalid. The trial court, therefore, did not err in granting appellee's Motion for Summary Judgment while denying that filed by appellant.
Appellant's sole assignment of error is, therefore, overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed.
Costs to appellants.
Hon. Julie Edwards, P.J. Hon. Sheila Farmer, J. Hon. John Wise, J. concurs.
[1] The motorcycle liability insurance policy insured a 1976 Honda Goldwing motorcycle.
[2] Since there are still claims pending against other defendants, the trial court, in its June 12, 2001 Judgment Entry, stated as follows: "This constitutes a final appealable order. There is no just cause for delay."