OPINION
On March 8, 2000, appellees, James and Gail Pillo, filed a complaint for personal injuries sustained by James Pillo as a result of a motorcycle/automobile accident on June 15, 1999 involving one Leonard Stricklin as the tortfeasor. Said complaint named as defendants Mr. Stricklin, American States Preferred Insurance Company (appellees' insurance company) and Mary Jo Perry.
On April 24, 2000, appellees filed a motion for leave to amend the complaint to add appellants, Transcontinental Insurance Company and Continental Casualty Company. Appellees also filed a motion for leave to file a motion for summary judgment against appellants. By judgment entries filed April 25, 2000, the trial court granted both motions.
On April 27, 2000, appellees filed an amended complaint, adding appellants as new party defendants. Against Transcontinental, appellees claimed the business auto policy issued to ASC Industries, Inc., appellee James Pillo's employer, provided appellees with $1,000,000 in uninsured/underinsured motorists coverage. Against Continental, appellees claimed a commercial umbrella policy issued to ASC Industries, Inc. provided appellees with an additional $4,000,000 in uninsured/underinsured motorists coverage. On same date, appellees filed a motion for summary judgment against appellants. By judgment entry filed June 5, 2000, the trial court granted appellees' motion for summary judgment as against appellants.
Appellants filed an appeal and this court reversed the decision and remanded the case to the trial court for further discovery. See, Pillov. Strickland (January 29, 2001), Stark App. No. 2000CA00171.
On February 27, 2001, appellees filed a second amended complaint. On March 15, 2001, appellants answered and counterclaimed, seeking equitable reformation.
On April 25, 2001, appellees renewed their motion for summary judgment. Appellants filed their motion for summary judgment on May 31, 2001. By judgment entry filed June 12, 2001, the trial court granted appellees' motion and referred the matter to binding arbitration.
Appellants filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS-APPELLEES AND AGAINST TRANSCONTINENTAL INSURANCE COMPANY AND CONTINENTAL CASUALTY COMPANY.
 I
Appellants claim the trial court erred in granting summary judgment to appellees. Specifically, appellants claim the trial court erred in finding that the uninsured/underinsured motorists coverage rejection form of the Continental policy did not satisfy the requirements of R.C. 3937.18, and erred in failing to reform the policies to reflect the clear intent of the parties. We disagree.
Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in Stateex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35.
We will address appellants' arguments as they appear in their brief. Appellants argue Continental's umbrella policy did not provide appellees with uninsured/underinsured motorists coverage because the named insured rejected such coverage in accordance with the requirements of R.C.3937.18(C). Said section states as follows:
 A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. * * * A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this "section" shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section,
and shall be binding on all other named insureds, insureds, or applicants. (Emphasis added.)
By judgment entry filed June 12, 2001, the trial court found Continental's rejection was invalid pursuant to Linko v. Indemn. Ins.Co. of N. Am. (2000), 90 Ohio St.3d 445, wherein the Supreme Court of Ohio held the following at 449:
 Gyori [v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565] stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in "name." We agree with the following required elements for written offers imposed by Ohio appellate courts: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits.
Appellants do not argue that the rejection form at issue meets the requirements of Linko, but rather that Linko is inapplicable sub judice
because said case interpreted a former version of R.C. 3937.18. Appellants argue the version of R.C. 3937.18 applicable sub judice, as amended by H.B. 261, effective September 3, 1997, altered the requirements of offers and rejections and made them "less stringent then those at issue in Linko." Appellants' Brief at 10. Appellants specifically cite to the "presumption" language of the statute as emphasized supra. Appellees argue H.B. 261 did not eliminate the Linko
requirements. This court has recently addressed this argument in Pillov. Stricklin (December 31, 2001), Stark App. No. 2001CA00204, unreported. In reviewing a rejection of uninsured/underinsured motorists coverage in relation to Mr. Pillo's own motorcycle liability insurance policy, this court stated the following at 5 and 7:
 We concur with appellees that the 1997 Amendments to R.C. 3937.18 did not eliminate the Linko requirements. As noted by appellees, no provisions in H.B. 261 clarified or modified what the contents of a written offer must be.
* * *
 According to appellant, the `presumption' referred to above constitutes a conclusive presumption as opposed to a rebuttable presumption. We, however, do not agree. According to State v. Myers (1971), 26 Ohio St.2d 190, 201, `* * * statutory presumptions not specifically designated to be conclusive, may be rebutted by other evidence. * * *' (Citations omitted.) Thus, since the statutory presumption set forth in R.C. 3937.18(C) is not `specifically designated to be conclusive', we find that the same is rebuttable. See also Thomas Steel Strip Corp. v. Limbach (1991), 61 Ohio St.3d 340. In short, the presumption of an offer of coverages consistent with R.C. 3937.18(A) was rebuttable.
Based upon the foregoing, we find the trial court did not err in finding that the uninsured/underinsured motorists coverage rejection form of the Continental policy did not satisfy the requirements of R.C. 3937.18.
Appellants argue in light of the trial court's decision that appellees are insureds under the policies pursuant to Scott-Pontzer v. LibertyMutual Fire Insurance Company (1999), 85 Ohio St.3d 660, the trial court should have reformed the policies to reflect the clear intent of the parties.
Reformation is a remedy to correct a written contract if said contract fails to reflect the agreement of the parties. Castle v. Daniels (1984),16 Ohio App.3d 209. Appellants argue the policies at issue should be reformed because they do not reflect the intent of the parties, to wit: appellees were not named insureds, appellee James Pillo was acting outside the course and scope of his employment at the time of the accident and appellee James Pillo's motorcycle was not a "covered auto" under the policies. In reviewing the relevant provisions of the policies, we find them to mirror the language of the policies in the Scott-Pontzer case.[1]
In said case, the Supreme Court of Ohio found the corporation's employee was entitled to uninsured/underinsured motorists benefits under the policies. In reaching this decision, Justice Douglas noted the following at 666:
 We realize that the conclusion reached herein may be viewed by some as a result that was not intended by the parties to the insurance contracts at issue. Nonetheless, we believe that to adopt appellees' position in this matter would clearly produce absurd results.
While the Supreme Court of Ohio acknowledged the decision may not be viewed as the result intended by the parties, the court did not reform the policies. In fact, the court did not discuss reformation in any manner, either as an equitable solution or in declining to address it. We, in turn, decline to adopt an equitable reformation solution when the Supreme Court of Ohio clearly could have done so but did not.
Upon review, we find the trial court did not err in granting summary judgment to appellees.
The sole assignment of error is denied.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
Hon. Sheila G. Farmer, P.J., Hon. John W. Wise, J., Hon. John F. Boggins, J., concur.
[1] The facts of this case are similar to the facts in Scott-Pontzer. In Scott-Pontzer, an employee of a corporation was involved in an accident while driving his wife's vehicle outside the course and scope of his employment.